NO. 07-01-0087-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 11, 2003

_____

KATHY MCEWIN, APPELLANT

V.

ALLSTATE TEXAS LLOYDS, APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-506865; HONORABLE SAM MEDINA, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

OPINION

Kathy McEwin appeals from a take-nothing summary judgment which was based

on the Concealment or Fraud clause in a homeowner's insurance policy. We affirm.

I. BACKGROUND

On April 8, 1996, appellant Kathy McEwin and her then husband, James R. McEwin,

owned a house in Lubbock County. The house was insured by appellee Allstate Texas

Lloyds (Allstate) pursuant to a Texas Homeowners B policy which designated both Kathy and James as named insureds. Security State Bank of Idalou, Texas, was named in the policy as mortgagee.

On April 8th James instigated the intentional burning of the McEwins' house. Kathy did not know of James' plans and was not involved in the arson. The McEwins reported the fire loss to Allstate. Subsequently, a sworn proof of loss was filed by the McEwins. The proof of loss form did not inquire into whether the McEwins, as insureds, played any part in causing the fire. They made no representation in the proof of loss as to the origin of the fire or whether either of them had any involvement in causing it.

Allstate initiated an investigation into the claim, including hiring an investigator to determine the cause of the fire, hiring attorneys to take examinations under oath from the McEwins, and incurring additional investigation expenses. During examinations under oath, the McEwins denied any knowledge of the cause of the fire. It was later discovered that James was involved in burning the house. He was convicted of arson.

Kathy and James were divorced in 1997. She was awarded all interest in the Allstate policy as her separate property.

During the pendency of its investigation, Allstate advanced $1,000 to the McEwins on contents coverage and $10,648 for additional living expenses. Pursuant to agreement with the McEwins, Allstate also paid Security State Bank its mortgage balance of $37,725.09. Allstate eventually denied that it owed any further payments to or for the

benefit of the McEwins because of James' involvement in burning the house and the following clause in the Conditions section of the policy:

> 2. Concealment or Fraud. This policy is void as to you and any other <u>insured</u>, if you or any other <u>insured</u> under this policy has intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance, whether before or after a loss. (emphasis in original)

The policy definitions provided that "you" referred to the "named insured" shown on the declarations page, and the spouse if a resident of the same household. The term "<u>Insured</u>" was defined to include "you and residents of your household . . . ." As previously noted, both James and Kathy were designated on the declarations page as named insureds.

Allstate asserted that the policy was void as to both of the McEwins because of James' actions. When Allstate denied further payments and declared the policy void, Kathy sued both Allstate and James. Her suit against James was severed into a separate suit, and only the claim against Allstate is before us.

Allstate moved for summary judgment on the basis that the language of the Concealment or Fraud clause was unambiguous and voided the policy as to Kathy, a named insured, because of the actions of James, who was also a named insured. Kathy responded by urging that (1) she was an innocent spouse, any policy benefits would be her separate property because she was awarded the benefits in the divorce, and the parties stipulated that she was not involved in the planning or setting of the fire; and (2)

3

Article 21.19 of the Texas Insurance Code[1] resulted in the Concealment or Fraud policy clause being ineffective to void the policy unless Allstate proved that it waived or lost a valid policy defense by making the payments it made, and its summary judgment proof did not do so.

In support of her position that she was an innocent spouse and should be allowed recovery, Kathy references Kulubis v. Texas Farm Bureau Underwriters Ins. Co., 706 S.W.2d 953 (Tex. 1986). To support her second assertion, she cites Delta Lloyds Ins. Co. v. Williamson, 720 S.W.2d 232 (Tex.App.–Beaumont 1986, no writ) and United States Fire Ins. Co. v. Skatell, 596 S.W.2d 166 (Tex.App.–Texarkana 1980, writ ref'd n.r.e.). She also urges that Allstate had the duty to investigate the loss regardless of its cause. Thus, she maintains, investigative expenses would have been incurred without regard to the proof of loss and James' false statements in his examinations under oath. As part of her summary judgment proof she submitted an affidavit from a licensed insurance adjuster. In the affidavit, the adjuster opined that Allstate had the duty to investigate the loss and to pay the mortgagee regardless of the truth or falsity of statements in the proof of loss and examinations under oath.[2] Her response to Allstate's Motion for Summary Judgment also urged the existence of (1) a stipulation between the parties that Allstate would be entitled

---

[1]TEX. INS. CODE art. 21.19 (Vernon 1981).

[2]Allstate did not controvert the statements. The agreement between the McEwins and Allstate as to Allstate's payment to the mortgagee recited that Allstate could pay the mortgagee without prejudice and would receive credit for the payment even though payment directly to the mortgagee could not be made under the policy unless payment was not due to the McEwins.

to credit for any payments it made if Kathy ultimately prevailed, and (2) an agreement between the McEwins and Allstate that any payments made by Allstate would not constitute a waiver of any defenses on behalf of Allstate.

The trial court's summary judgment recited the bases for its ruling. The bases were that the Concealment or Fraud policy clause was unambiguous, James' fraudulent misrepresentation and concealment of material facts and fraud caused the policy to become void, and Kathy's right to recover was precluded based on the Concealment or Fraud policy clause. On appeal Kathy urges by one general issue that the trial court erred in granting summary judgment. See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).

## II.  SUMMARY JUDGMENT

A party may prevail on a summary judgment motion by conclusively establishing, via affirmative evidence, the absence of any genuine issue of a material fact and that the party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).[3]  We review the granting of such an affirmatively-established summary judgment using the standards set out in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985):

> 1.  The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

---

[3]Further reference to a Rule of Civil Procedure will by reference to "TRCP_."

2. In determining whether there is a disputed issue of material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

If the movant for summary judgment is a defendant, then in order to be entitled to an affirmatively-proved summary judgment the movant must conclusively disprove at least one of the elements of the non-movant's cause of action, or, alternatively, the movant must conclusively prove each element of an affirmative defense. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

If the trial court does not specify the basis on which it granted summary judgment, the judgment will be affirmed if any of the grounds in the motion are meritorious. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380-81 (Tex. 1993). If the order granting the motion for summary judgment specifies the basis on which the judgment was granted then the rule that we must affirm the judgment of the trial court if any of the grounds urged for summary judgment are meritorious does not apply. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

## III. KATHY'S INNOCENT SPOUSE STATUS

Kathy's status as an innocent spouse, see Kulubis, 706 S.W.2d at 955, does not determine her right to recover from Allstate if the contract terms provide otherwise. See Texas Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 878, 881 (Tex. 1999).

6

In Texas, insurance policies are interpreted according to rules generally used for contract interpretation. See id at 879. Such rules require us to give effect to the written expression of the parties' intent, consistent with applicable rules of law. Id. Absent ambiguity in the contract language, the instrument alone will be deemed to express the intent of the parties. Exxon Corp. v. West Tex. Gathering Co., 868 S.W.2d 299, 302 (Tex. 1993). A contract is construed in accordance with the plain meaning of its language, unless it definitely appears from the writing as a whole that the intention of the parties would be defeated by such a procedure. DeWitt County Elec. Co-op. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).

The Concealment or Fraud clause provides that the policy is void as to both McEwins, as named insureds, if either of them (1) intentionally concealed any material fact or circumstance, (2) intentionally misrepresented any material fact or circumstance, (3) made false statements relating to the insurance, or (4) committed fraud relating to the insurance. The trial court determined the language of the clause to be unambiguous. Kathy does not challenge that determination on appeal. We agree that the clause is not ambiguous as applied to these facts. Under the policy language, the policy is void as to Kathy if it is void because of James' actions. See Murphy, 996 S.W.2d at 878, 881, and 882 (Hecht, J. concurring).

The traditional elements of fraud are: (1) a material representation; (2) that was false; (3) that the speaker knew the representation to be false or made it with reckless disregard of the truth; (4) the speaker made it with the intention that it be acted upon by

7

the other party; (5) the other party acted in reliance upon it; and (6) the other party suffered injury. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). But not all fraud is comprehended within elements of the traditional test. Fraud is multiform and as such admits of no single, all-encompassing definition. See First State Bank of Miami v. Fatheree, 847 S.W.2d 391, 396 (Tex.App.--Amarillo 1993, writ denied). The gist of fraud is successfully using cunning, deception or artifice to cheat another to the other's injury. See id.

In determining that James "committed fraud relating to th[e] insurance," we need go no further than Kathy's contention and summary judgment evidence that Allstate had the duty to investigate the fire loss once it occurred and was reported, and that investigative expenses would have been incurred regardless of James' false statements in his examinations under oath.[4] Until James intentionally caused the house fire and the loss was reported, Allstate had suffered no injury. The fire and loss report triggered incurrence of expenses and payments by Allstate. The series of events encompassing James' intentionally causing loss of the insured home and turning in a loss report without disclosing that the loss was due to his intentional acts comprised perpetration of a fraud on Allstate relating to the insurance, even had James not made false statements in his later examinations under oath. See id. Because of James' fraud, the Concealment or Fraud clause voided the policy as to both James and Kathy, see Murphy, 996 S.W.2d at

---

[4]The policy provisions required Allstate to begin investigation of the claim within 15 days after receiving a written notice of claim.

8

878, 881 and 882 (Hecht, J., concurring), unless Article 21.19 makes the clause of no effect.

## IV. ARTICLE 21.19

Article 21.19 provides that:

> Any provision in any contract or policy of insurance issued or contracted for in the State which provides that the same shall be void or voidable, if any misrepresentations or false statements be made in proofs of loss or of death, as the case may be, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract or policy, unless it be shown upon the trial of such suit that the false statement made in such proofs of loss or death was fraudulently made and misrepresented a fact material to the question of the liability of the insurance company upon the contract of insurance sued on, and that the insurance company was thereby misled and caused to waive or lose some valid defense to the policy.

TEX. INS. CODE art. 21.19 (Vernon 1981).

In construing a statute, our objective is to determine and give effect to the Legislature's intent. We begin with the presumption that the Legislature intended the plain and common meaning of its words. See National Liab. and Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000); St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997). Construed according to the foregoing presumption, Article 21.19 applies to policy provisions that render a policy void or voidable because of misrepresentations or false statements made in the proofs of loss or death. The term "proof of loss" as used in the statute has been held to encompass investigative examinations under oath. See Skatell, 596 S.W.2d at 169.

9

We need not consider what Kathy asserts is the controlling question: whether James' false statements during his examinations under oath caused Allstate to waive or lose some valid policy defense. The words of Article 21.19 according to their plain and common meaning do not purport to make provisions of the Concealment or Fraud clause of no effect to the extent the provisions void the policy for fraud which is not based on material misrepresentations in the proof of loss. James' deceptive actions in (1) causing the house to be intentionally burned, and (2) filing a loss report without disclosing his complicity in the fire with the resulting expense and detriment to Allstate, were a fraud on Allstate without regard to his later false statements in examinations under oath.

We do not consider the cases cited by Kathy to be controlling. In neither case did a named insured intentionally cause the loss of insured property for which claim was being made, as James did here. In Skatell, the insurer did not contend that the insured knowingly or intentionally caused the loss of insured property. The false statements urged by the insurer as a basis for voiding the policy were made by the insured in an examination under oath and related to the insured's prior criminal history. Id. at 168-69. In Williamson, the insurer contended that the insured knowingly and intentionally caused the insured property to be burned. The jury found that the insured had not done so. Williamson, 720 S.W.2d at 232.

The trial court specified fraud as one ground for granting summary judgment. Summary judgment voiding the policy as to Kathy was properly granted on the basis of

James' fraud and the Concealment or Fraud policy clause. Article 21.19 does not apply to make the clause of no effect as applied to these facts.

We overrule Kathy's sole issue. The judgment of the trial court is affirmed.


Phil Johnson
Chief Justice